**Ernest F. Koschineg (Pro Hac Vice forthcoming)**
**Jessica M. Heinz (Pro Hac Vice forthcoming)**
**CIPRIANI & WERNER PC**
**450 Sentry Parkway - Suite 200**
**Blue Bell, PA 19422**
**Telephone: (610) 567-0700**
**ekoschineg@c-wlaw.com**
**jheinz@c-wlaw.com**

**Michael B. Sachs, Esq., SBN 235048**
**CLARK HILL LLP**
**505 Montgomery Street, 13th Floor**
**San Francisco, CA 94111**
**Telephone: (415) 984-8530**
**Facsimile: (415) 984-8599**
**msachs@clarkhill.com**

**Attorneys for Defendant,**
**Mint Mobile, LLC**

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL FRASER, an individual; | Case No. 3:22-cv-00138 |
| Plaintiff, | |
| v. | **DEFENDANT MINT MOBILE, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| MINT MOBILE, LLC, a Delaware limited liability company, | |
| Defendant. | **ACTION FILED: JANUARY 11, 2022** |
| | **HEARING: APRIL 14, 2022** |

# NOTICE OF MOTION

TO ALL PARTIES AND THEIR CONSEL OF RECORD:

PLEASE TAKE NOTICE that at 8:00 a.m. on April 14, 2022 before the Honorable William H. Aslup, United States District Judge, in Courtroom 12, at 19th Floor 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant MINT MOBILE, LLC ("MINT" or "Defendant") will hereby and does move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Plaintiff Brian Fraser's Complaint.

MINT further moves to dismiss Plaintiff's Complaint and be compelled to arbitrate this matter in accordance with the Arbitration Clause contained within the subject contract. MINT further moves to dismiss all claims on the basis that Plaintiff has failed to plausibly allege proximate cause.

MINT moves to dismiss Counts IV, V, and VI of Plaintiff's claims because Plaintiff is seeking monetary relief under the Cal. Bus. & Prof. Code § 17200 et seq., which does not allow monetary relief. On the same Counts, Plaintiff has failed to plead what restitution, if any, he is entitled under the Cal. Bus. & Prof. Code § 17200 *et seq*.

MINT moves to dismiss Count III of Plaintiff's Complaint because Plaintiff is pursuing a civil remedy under sections of the Computer Fraud and Abuse Act, §§ 1030(a)(2)(C) and 1030(a)(4) that do not permit civil actions.

MINT moves to dismiss Count XI of Plaintiff's Complaint because Plaintiff has not adequately pled the existence of an implied contract.

MINT moves to dismiss all requests for punitive damages in the Complaint. Specifically, Plaintiff has failed to allege that an "officer, director, or managing agent" of MINT knew its employees were engaged in fraudulent behavior, nor that an "officer, director, or managing agent" of MINT allowed the fraudulent activity to occur. Moreover, MINT moves to dismiss Plaintiff's punitive damages claims as to Counts X, XI, and XII because punitive damages are not available in breach of contract cases. Also, MINT moves to dismiss punitive damages claims under Count II because the statutory remedial scheme

prescribed by the FCA does not permit punitive damages. MINT further moves to dismiss punitive damages claims under Count III because the statutory remedial schedule prescribed by 18 U.S.C. § 1030 does not allow for punitive damages. MINT further moves to dismiss punitive damages claims under Count IV – VI because the Cal. Bus. & Prof. Code § 17200 does not allow for punitive damages.

MINT additionally moves to dismiss Counts VII – IX because these claims are barred by the Economic Loss Doctrine.

MINT moves to dismiss Plaintiff's claims for restitution for alleged violations of 47 U.S.C. § 206 as restitution is not an available remedy under this statute.

MINT moves to dismiss Count XII of Plaintiff's Complaint because Plaintiff is attempting to impose a duty on MINT greater than what is contained in the express contract.

Dated:  February 18, 2022

By:    /s/*Michael Sachs*
Michael B. Sachs
**CLARK HILL LLP**
505 Montgomery St., 13th Floor
San Francisco, CA 94111
Telephone:  (415) 984-8530
Facsimile:  (415) 984-8599
msachs@ClarkHill.com

Ernest F. Koschineg, III
(Pro Hac Vice forthcoming)
Jessica M. Heinz
(Pro Hac Vice forthcoming)
**CIPRIANI & WERNER PC**
450 Sentry Parkway - Suite 200
Blue Bell, PA 19422
Telephone: (610) 567-0700
ekoschineg@c-wlaw.com
jheinz@c-wlaw.com

*Attorneys for Defendant,*
*Mint Mobile, LLC*

# TABLE OF CONTENTS

<u>Page</u>

I.    INTRODUCTION ........................................................................................... 1

II.   FACTS ........................................................................................................... 2

III.  STANDARD OF REVIEW ........................................................................... 2

IV.  ARGUMENT ................................................................................................. 3

     A.    Under the Terms and Conditions of the Subject Contract, Plaintiff's Complaint Should be Dismissed And Plaintiff Should Be Compelled to Arbitrate This Matter .......................................................... 3

     B.    Plaintiff Has Failed To Allege Proximate Cause Between The Alleged "SIM Port" And The Loss Of His Cryptocurrency ................................ 6

          1.    Plaintiff Has Failed to Allege How Accessing His CPNI or CPI Led to the Theft of His Cryptocurrency ...................................... 7

          2.    Plaintiff's Allegations Fail Because They Rely on Unforeseeable Criminal Acts .......................................................... 9

     C.    Plaintiff's Claims Under the California Unfair Competition Law – Cal. Bus. & Prof. Code § 17200 *et seq.*, Counts IV, V, and VI, Should be Dismissed Because Plaintiff is Seeking Monetary Damages ......... 10

          1.    Plaintiff is not entitled to monetary damages under the California Business and Professional Code .............................. 11

          2.    Plaintiff has failed to adequately plead what, if any, restitution he is entitled .............................................................. 11

     D.    Plaintiff's Claim Under The computer Fraud and Abuse Act, 18 U.S.C. § 1030, Count III, Should Be Dismissed Because §§ 1030(a)(2)(C) and 1030(a)(4) Do Not Permit Civil Actions .............. 12

     E.    Plaintiff's Claim for Breach of Implied Contract, Count XI, Should Be Dismissed Because Merely Pleading Opening a MINT Wireless Account Is Insufficient to Demonstrate The Existence Of The Terms Of An Implied Contract ........................................................ 14

     F.    Plaintiff's Claims for Punitive Damages Should be Dismissed Because Plaintiff Has Not Adequately Pled Entitlement to Punitive Damages .................................................................................... 15

          1.    Plaintiff has not adequately plead he is entitled to punitive damages under any Counts in his Complaint. ........................... 15

2.    Plaintiff's Allegations Regarding Malice, Fraud, and Oppression Are Conclusory and Lack Adequate Factual Support to Identify MINT's Metal State of Mind .................... 17

3.    Plaintiff's Claims for Punitive Damages Fail As To The Contractual Counts, Counts X, XI, and XII, As A Matter Of Law ........................................................... 18

4.    Plaintiff's Claim for Punitive Damages Under Counts II, III, IV, V, and VI Fail As A Matter of Law ........................................... 18

G.    Plaintiff's Tort Claims, Counts VII – IX, Should Be Dismissed Under The Economic Loss Doctrine ................................................................ 20

1.    Plaintiff has Failed to Satisfy The Requirements To The Exception To The Economic Loss Doctrine ............................ 20

2.    On the Balancing Test, Plaintiff Cannot Satisfy the *J'Aire* Factors ................................................................................. 21

H.    Plaintiff's Claims For Injunctive Relief Under Count II, Violation Of 47 U.S.C. § 206, Should Be Stricken ................................................. 23

I.    Plaintiff's Claims For Breach Of The Covenant Of Good Faith And Fair Dealing, Count XII, Should Be Dismissed Because Plaintiff Has Merely Alleged That MINT Failed To Comply With The Express Terms Of The Contract ................................................................ 23

V.    CONCLUSION ............................................................................................ 25

# TABLE OF AUTHORITIES

## Cases

*Antman v. Uber Techs., Inc.*, 2015 WL 6123054 (N.D. Cal. October 19, 2015) ............................................................................................... 8

*Antman v. Uber Techs., Inc.*, 2018 WL 2151231 (N.D. Cal. May 10, 2018) .................... 8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................ 2, 7, 17

*Avidity Partners, LLC v. State of Cal.*, 221 Cal. App. 4th 1180, 1204 (2013)................. 24

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)........................................ 2, 3, 17

*Blix St. Recs., Inc. v. Cassidy*, 191 Cal. App. 4th 39 (2010) ................................ 3

*Brousseau v. Jarrett*, 73 Cal. App. 3d 864 (1977) .......................................... 17

*Citizens Bank of Pennsylvania v. Reimbursement Techs Inc.*, 609 F. App'x 88 (3d Cir. 2015) ...................................................................... 9, 10

*Citizens Bank of Pennsylvania v. Reimbursement Techs., Inc.*, 2014 WL 2738220 (E.D. Pa. June 17, 2014).................................................... 9, 10

*Clinton Plumbing & Heating of Trenton, Inc. v. Ciaccio*, 2010 WL 4224473 (E.D. Pa. Oct. 22, 2010) ............................................................. 13, 19

*Clinton Plumbing & Heating of Trenton, Inc. v. Ciaccio*, 2011 WL 6088611 (E.D. Pa. Dec. 7, 2011).................................................................. 13

*Cruz v. HomeBase*, 83 Cal. App. 4th 160 (2000) ............................................. 16

*Div. of Labor Law Enforcement v. Transpacific Transp. Co.*, 69 Cal. App. 3d 268 (1977).................................................................................. 14

*Foster Poultry Farms v. Aklar-Rapidpak-MP Equip., Inc.*, 868 F. Supp. 2d 983 (E.D. Cal. 2012)...................................................................... 14

*Franklin v. Gwinnett County Pub. Sch.*, 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992)..................................................................... 18, 23

*Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119 (9th Cir. 2014)............................................................................... 11, 12, 20

*Gorlach v. The Sports Club Co.*, 209 Cal. App. 4th 1497 (2013) ............................. 14, 15

*Gregorian v. Nat'l Convenience Stores, Inc.*, 174 Cal. App. 3d 944 (1985) ................... 9

*Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 349 (2000) .................................... 24

*In re Napster, Inc. Copyright Litig.*, 354 F. Supp. 2d 1113 (N.D. Cal. 2005) ............ 11, 12

iii

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ............................................................................. 8

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113 (N.D. Cal. 2018) ............................................................................................... 21

*J'Aire Corporation v. Gregory*, 24 Cal. 3d 799 (1979)................................... 20, 21, 22, 23

*Jackson v. Cty. of Los Angeles*, 60 Cal. App. 4th 171 (1997) ..................................... 3, 4, 6

*Jesse v. Malcmacher*, 2016 WL 9450683 (C.D. Cal. Apr. 5, 2016) ............................. 9

*Jimenez v. Superior Court*, 29 Cal. 4th 473 (2002) ............................................... 20

*Johnson v. Nw. Airlines, Inc.*, 2010 WL 5564629 (N.D. Cal. May 5, 2010) .................... 6

*Kelley v. Corr. Corp. of Am.*, 750 F. Supp. 2d 1132 (E.D. Cal. 2010) ........................... 15

*Lavine v. Jessup*, 161 Cal. App. 2d 59 (1958) ...................................................... 17

*Martinez v. Pacific Bell*, 225 Cal. App. 3d 1560 (1990) ..................................... 1, 7, 9

*Myers Building Industries, Ltd. v. Interface Technology, Inc.* 13 Cal.App.4th 949 (1993) .................................................................................................. 18

*O'Keefe v. Inca Floats, Inc.*, 1997 WL 703784 (N.D. Cal. Oct. 31, 1997) .................... 9

*Ott v. Alfa-Laval Agri, Inc.*, 31 Cal. App. 4th 1439 (1995).................................... 21

*Perez v. Auto Tech. Co.*, 2014 WL 12588644 (C.D. Cal. July 14, 2014) .................... 3, 17

*Porter v. Warner Holding Co.,* 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946)........................................................................................................... 19

*Robinson Helicopter Co., v. Dana Corp.*, 34 Cal. 4th 979 (2004) ............................ 20

*Sacramento Cty. Retired Employees Ass'n v. Cty. of Sacramento*, 975 F. Supp. 2d 1150 (E.D. Cal. 2013) ................................................................. 14, 15

Shapiro v. AT&T Mobilitiy, LLC, 2:19-cv-8972-CBM-FFM (C.D.CA. May 18, 2020)........................................................................................................ 21

*Soil Retention Products, Inc. v. Brentwood Industries, Inc.* 2021 WL 689914 .... 10, 11, 20

*State of Cal. v. Super. Ct.*, 150 Cal. App. 3d 848 (1984) ........................................ 6

*The Swahn Grp., Inc. v. Segal*, 183 Cal. App. 4th 831 (2010)................................... 3

*Tiffin Motorhomes, Inc. v. Superior Ct.*, 202 Cal. App. 4th 24 (2011) ....................... 6

*Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, (1994) ......................... 15

*Torralbo v. Davol, Inc.*, 2017 WL 5664993 (C.D. Cal. Oct. 19, 2017) ....................... 17

iv

*UMG Recordings, Inc. v. Global Eagle Entm't*, 117 F. Supp. 3d 1092 (C.D. Cal. 2015) ............................................................................................... 3, 20

*Vu v. Cal. Comm. Club, Inc.*, 58 Cal. App. 4th 229 (1997) ................................. 6

*Weeks v. Baker & McKenzie*, 63 Cal. App. 4th 1128 (1998) ............................ 15

*White v. Ultramar, Inc.*, 21 Cal. 4th 563 (1999) ............................................. 16

*Yari v. Producers Guild of Am., Inc.*, 161 Cal. App. 4th 172 (2008) ............... 14

## **Statutes**

18 U.S.C. § 1030 ...................................................................... 12, 13, 19

47 U.S.C. § 206 ....................................................................... 18, 19, 23

47 U.S.C. § 207 ................................................................................ 18

47 U.S.C. § 401 ................................................................................ 19

Cal. Bus. & Prof. Code § 17200 *et seq.* .......................................... 10, 11, 20

Cal. Civ. Code § 1621 ........................................................................ 14

Cal. Civ. Code § 3294(b) ................................................................ 11, 16

I.      **INTRODUCTION**[1]

Brian Fraser's ("Plaintiff") Complaint against MINT Mobile LLC ("MINT") seeks to hold MINT responsible for the criminal acts of third parties related to the theft of Plaintiff's cryptocurrency. Additionally, Plaintiff has already conceded that the subject contract with MINT has a valid arbitration clause, yet now brings this action seeking damages under contractual and tort theories related to the theft of his cryptocurrency. *See generally* Compl. ¶ 99. Plaintiff's two-hundred-fifty-two (252) paragraph Complaint alleges that a third-party stole cryptocurrency assets, and seeks to hold MINT responsible for this crime. *See* Compl. ¶¶ 37 – 58 and Compl. Counts I-XII. In so doing, Plaintiff attempts to paint a clear picture of how his assets were stolen by a third-party by alleging that MINT mobile was victimized by a computer hack, which in turn allowed the thief to obtain certain personal information. Compl. ¶¶ 37 – 58. But Plaintiff falls well short of completing the causal chain because he fails to allege any information that the thief purportedly obtained that allowed the thief to have any knowledge of Plaintiff's cryptocurrency holdings, nor does the Complaint have any allegations that the thief having Plaintiff's personal information would allow insight into any banking information at all.

Liability in both tort and contract "extends to damage which is proximately or legally caused by the defendant's conduct, not to damage suffered as a proximate result of the independent intervening acts of others." *Martinez v. Pac. Bell*, 225 Cal. App. 3d 1557, 1565 (1990). Here, Fraser concedes that the harm he allegedly suffered resulted from the "independent intervening acts" of others (i.e., the hackers). Compl. ¶ 73. Yet he trivializes multiple indispensable steps in the alleged theft by ignoring them—as if not pleading how the hackers turned access to a phone number into a $466,000 theft will allow the Court to presume that the missing steps were foreseeable to, and attributable to, MINT. Because Fraser fails to plausibly allege how the alleged theft occurred, he necessarily fails to allege that MINT proximately caused the theft.

---

[1] MINT reserves all of its rights under the Terms and Conditions of the subject contract. MINT also reserves it right to later file a Motion to Compel Arbitration in accordance with the arbitration provision.

1

2

## II.   FACTS[2]

3

Mint Mobile, LLC, is a mobile virtual network operator currently using the infrastructure of Metro by T-Mobile's existing network to provide wireless cellular services to customers. Compl. ¶ 3. Between June 8, 2021 and June 10, 2021, MINT fell victim to a series of cybersecurity thefts, wherein certain of its customers' telephone numbers, email addresses, passwords, bill amount, international call detail information, account number, and subscription features were stolen. Compl. ¶ 61. With this information, the thief is able to impersonate the MINT customer and initiate a "port request," which transfers the MINT service to a new service provider. Compl. ¶ 49. This is known as a "Sim port," and upon completion, with the aforementioned information, the thief is able to steal the electronic identity of the MINT customer. Compl. ¶ 55. Then, the thief is able to divert himself access to the MINT customer's banking and investment information. Compl. ¶ 56.

Without any factual support to complete the chain of causation, Plaintiff pleads that just by knowing the Plaintiff's phone number and email address, the thief was able to abscond with Plaintiff's cryptocurrency assets. Compl. ¶¶ 65, 66.

## III.   STANDARD OF REVIEW

Under federal pleading standards, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Conversely, a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action

---

[2] For purposes of the instant motion only, MINT assumes the truth of the allegations set forth in Plaintiff's Complaint. MINT reserves all right to later dispute these facts as discovery and investigation are ongoing.

1  will not do." *Id*. (internal quotation marks and citations omitted). If a complaint "pleads

2  facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line

3  between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550

4  U.S. at 557).

5      Moreover, claims for deceit and misrepresentation sound in fraud and thus "must

6  meet the heightened pleading requirements of Rule 9(b)." *UMG Recordings, Inc. v. Glob.*

7  *Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1106 (C.D. Cal. 2015). Similarly, to the extent

8  a claim for punitive damages rests on an allegation that the defendant acted fraudulently,

9  the circumstances allegedly amounting to fraud must be pled with particularity. *Perez v.*

10  *Auto Tech. Co.*, 2014 WL 12588644, at *6 & n.33 (C.D. Cal. July 14, 2014).

11  **IV.   ARGUMENT**

12      **A.   Under the Terms and Conditions of the Subject Contract, Plaintiff's**
13          **Complaint Should be Dismissed And Plaintiff Should Be Compelled to**
14          **Arbitrate This Matter**

15      This Honorable Court should dismiss Plaintiff's Complaint and compel arbitration

16  because Plaintiff has alleged that he attempted to enforce the Arbitration Provision of the

17  subject contract.  As a result, Plaintiff should now be Judicially Estopped from attempting

18  to litigate this matter in a Federal Court. "The gravamen of judicial estoppel is not privity,

19  reliance, or prejudice. Rather it is the intentional assertion of an inconsistent position that

20  perverts the judicial machinery." *Blix St. Recs., Inc. v. Cassidy*, 191 Cal. App. 4th 39, 51

21  (2010) (quoting *Jackson v. County of Los Angeles*, 60 Cal. App. 4th 171, 183 (1997)).

22  "[T]he trial court may sustain a demurrer on the ground of judicial estoppel where the facts

23  pleaded and judicially noticed indicate as a matter of law the doctrine should be applied,

24  i.e., that a court has adopted or accepted as true the inconsistent position." *The Swahn Grp.,*

25  *Inc. v. Segal*, 183 Cal. App. 4th 831, 844 (2010).

26      "In accordance with the purpose of judicial estoppel, [] the doctrine should apply

27  when: (1) the same party has taken two positions; (2) the positions were taken in judicial

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake." *Jackson v. Cty. of Los Angeles*, 60 Cal. App. 4th 171 (1997).

In this case, Plaintiff has attempted to enforce the Arbitration Provision of the subject contract. Compl. ¶¶ 98; 99. In doing so, Plaintiff has pled that he "initially propounded upon MINT a pre-suit written demand for restitution and brought this claim against MINT in arbitration before the American Arbitration Association (AAA) in September 2021, as required by MINT's Terms and Conditions ("T&C")." *Id.* ¶ 99. Despite his purported attempt to comply[3] with the T&Cs of the subject contract by "propound[ing] upon MINT a pre-suit written demand," it is alleged that Mint failed to participate and comply, which, under the AAA rules, entitles Plaintiff to proceed in arbitration notwithstanding MINT's absence. *See* AAA R-31 (Commercial Rules) (stating "[T]he arbitration may proceed in the absence of any party or representative who, after due notice, fails to be present or fails to obtain postponement.").

The T&C's of the subject contract provide that the Commercial Rules will govern disputes arising from the T&C's. *See* Compl., "Exhibit B" at ¶ 2. Thus, AAA R-31 would permit Plaintiff to proceed to arbitration. AAA R-31 would also allow Plaintiff to receive an award on his claim provided that he "submit[s] such evidence as the arbitrator may require for the making of an award." *See* AAA R-31 (Commercial Rules).  Even if the Consumer Rules applied, which MINT does not contend that they do as it would be contrary to the T&C's given the amount of damages Plaintiff is seeking, a nearly identical rule, AAA R-39, would similarly permit the Plaintiff to proceed in arbitration *ex parte* and

---

[3] MINT did not receive documentation supporting Plaintiff's attempt to comply with the arbitration provision until after the lawsuit was filed, and the undersigned requested the supporting documents. MINT is now in possession of the documents, but has no record of ever receiving the same.

receive an award provided that he "submit[s] the evidence needed by the arbitrator to make an award." *See* AAA R-39 (Consumer Rules).

Moreover, Plaintiff has pled that he brought this claim before the AAA, and the AAA sent numerous requests to MINT asking "MINT participate in the arbitration proceeding and comply with the rules of the forum." Compl. ¶ 99. Plaintiff attempts to now argue that initiating the instant lawsuit was necessary "to enforce his rights." Compl. ¶ 100. However, under the AAA rules, Plaintiff was entitled to pursue arbitration despite MINT's alleged failure to participate and comply. *See* AAA R-31 (Commercial Rules); *see also* AAA R-39 (Consumer Rules). Plaintiff's allegation that this lawsuit was necessary is directly contradicted by AAA rules, and, despite the alleged failure to participate and comply, Plaintiff still could have proceeded to arbitration and received an award for his claims.

Plaintiff is now requesting that this Honorable Court find that the Arbitration is invalid and unenforceable. *Compare* Compl. ¶ 99, *with id*. ¶¶ 130 -136. Thus, Plaintiff has taken two positions on whether or not the Arbitration Provision is valid and enforceable by purportedly submitting his claims to the AAA in compliance with the T&C's, and thereafter filing a lawsuit with this Honorable Court alleging that the subject contract as a whole is invalid, and also arguing against the enforceability of the Arbitration provision. Moreover, AAA R-31 (Commercial Rules) and AAA-39 (Consumer Rules) explicitly provide that even if a party does default, the arbitration may proceed, and an award may issue. Element (1) and (2) are satisfied on the facts pled before this Court. According to his pleadings, Plaintiff first successfully filed his claim before the AAA (thereby acknowledging the validity of the arbitration provision in the T&C's), and now, Plaintiff is attempting to argue that the contract as a whole, and the arbitration provision in particular, is invalid.

Element (3) is satisfied because by allegedly attempting to enforce the Arbitration provision, and the AAA attempting to request MINT's participation in the arbitration proceeding, these acts qualify as "successfully asserting one position," i.e. that the Arbitration provision is enforceable and Plaintiff complied with the same, and is now "later

attempting to benefit from asserting" that it is now unenforceable. *Tiffin Motorhomes, Inc. v. Superior Ct.*, 202 Cal. App. 4th 24 (2011). Even further to the point, Plaintiff has pled that MINT failed to participate in arbitration. Compl. ¶ 100. Under the AAA rules, the arbitration could still have proceeded. *See* AAA R-31 (Commercial Rules); *see also* AAA R-39 (Consumer Rules). Thus, if the arbitration proceeded without MINT, Plaintiff would have been likely to receive a favorable award and thus "been successful in asserting his first position." *Jackson*, 60 Cal. App. 4th 171, at 183.

Element (4) is satisfied because Plaintiff agreed to the Arbitration provision by allegedly filing his claim before the AAA, and now attempts to hold it unenforceable, which are two totally inconsistent positions. Element (5) is satisfied because Plaintiff has not pled that he attempted to enforce the Arbitration provision as a result of "ignorance, fraud, or mistake." *Jackson,* 60 Cal. App. at 183. Thus, since all elements of Judicial Estoppel are satisfied, this Honorable Court should dismiss Plaintiff's Complaint, and compel Arbitration through the American Arbitration Association.

### B.   Plaintiff Has Failed To Allege Proximate Cause Between The Alleged "SIM Port" And The Loss Of His Cryptocurrency

This Honorable Court should dismiss Plaintiff's Complaint in its entirety because Plaintiff has failed to plead facts sufficient to establish a causal connection between the illegal "SIM port" and the theft of his cryptocurrency. Under California law, "causation of damages in contract cases, as in tort cases, requires that the damages be proximately caused by the defendant's breach, and that their causal occurrence be at least reasonably certain." *Vu v. Cal. Comm. Club, Inc.*, 58 Cal. App. 4th 229, 233 (1997). Proximate cause "'is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produced the injury [or damage complained of] and without which such result would not have occurred.'" *State of Cal. v. Super. Ct.*, 150 Cal. App. 3d 848, 857 (1984) [quoting *Kettman v. Levine*, 115 Cal. App 2d 844 (1953)]; *Johnson v. Nw. Airlines, Inc.*, 2010 WL

5564629, at *8 (N.D. Cal. May 5, 2010). A defendant's liability does not extend "to damage suffered as a proximate result of the independent intervening acts of others." *Martinez*, 225 Cal. App. 3d at 1565.

> ### 1.    Plaintiff Has Failed to Allege How Accessing His CPNI or CPI Led to the Theft of His Cryptocurrency

Plaintiff's allegations that hackers obtaining his CPNI that eventually led to the theft of his cryptocurrency are bare conclusions that lack explanation. *Iqbal*, 556 U.S. at 662. Baldly, Plaintiff alleges that "[o]n June 11, 2021, swiftly following MINT's release of Plaintiff's personal identifying information and account to an unauthorized person, Plaintiff was robbed of his assets – an act that would not have happened but for MINT providing the unauthorized person all of the tools needed to commit such a heinous and devastating act." Compl. ¶ 16.  Plaintiff describes a crime known as "SIM hijacking," which can be in the form of "SIM swapping" or "SIM porting," the latter of which is allegedly at issue in this case. Compl. ¶¶ 37, 38. "SIM porting" begins when a wireless provider "allows an unauthorized person access to a wireless telephone account without the knowledge of the accountholder" (sic). Compl. ¶ 40. The unauthorized person then uses personal identifying information provided by the carrier to instruct another mobile telephone provider to contact the original wireless provider to transfer service. Compl. ¶¶ 41, 49. Then, the original wireless provider transfers the unauthorized person the phone number of the original accountholder. Compl. ¶ 53. Then, using the telephone number as a recovery method, passwords are reset. Compl. ¶ 56.

Plaintiff then alleges that MINT ported his telephone number to Metro by T-Mobile, and, once this was done, the unauthorized person stole Plaintiff's cryptocurrency assets. Compl. ¶¶ 64-66. Missing entirely from Plaintiff's allegations are facts related to how a "SIM port" to an unauthorized person would allow the unauthorized person to have knowledge regarding the name(s) of Plaintiff's cryptocurrency banks. While Plaintiff alleges that the thief had access to his e-mail address and telephone number, missing from

these allegations is any explanation as to how the thief was able to have any knowledge whatsoever that Plaintiff even had a cryptocurrency account despite having access to personal information. Also missing from Plaintiff's allegations are the security requirements that are necessary to access the cryptocurrency accounts, security measures that the cryptocurrency account had in place to effectuate the movement of funds, and how having access to Plaintiff's personal information allowed the hackers to have knowledge of Plaintiff's cryptocurrency account and to bypass the account's security measures. Indeed, nowhere in Plaintiff's Complaint will one find identifying information, regarding Plaintiff's cryptocurrency account, nor how merely having access to personal information would allow the thief to have any knowledge about Plaintiff's cryptocurrency holdings.

The holes in Plaintiff's conclusory chain of causation overcome proximate causation as a matter of law. In *Antman v. Uber Techs., Inc.*, 2015 WL 6123054 (N.D. Cal. October 19, 2015), the plaintiff alleged that the defendant disclosed his "name and drivers' license information," as well as "other personal information," which hackers then used to "apply for the Capital One credit card." *Id.* But the court dismissed the claim because the plaintiff had failed to plead how a "person could apply for a credit card without a social security number," requiring the court to guess how the defendant's alleged disclosure led to the plaintiff's harm. *Id.* It reaffirmed that conclusion even after the plaintiff amended his pleadings to allege that his "bank account and routing number" were also stolen. *Antman v. Uber Techs., Inc.*, 2018 WL 2151231, at *10 (N.D. Cal. May 10, 2018).

By contrast, in *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017), the Court found a causal connection where an alleged data breach allowed hackers access to "names, email addresses, recovery email accounts, telephone numbers, birth dates, password, security questions and answers, and account 'nonce' (a cryptographic value unique to each account)." In this case, Plaintiff has not alleged that the "SIM port" that allegedly occurred allowed the hijackers access to any recovery e-mails, birth dates, passwords, security questions and answers, or account

"nonce." Rather, Plaintiff has alleged that the "SIM port" transferred his telephone number to Metro by T-Mobile. Compl. ¶¶ 37-59.   Then, the thief, by merely having access to Plaintiff's telephone number, email address, zipcode, and "PIN verification" was able to abscond with Plaintiff's cryptocurrency assets. ¶ 62. No facts are pled that would lend themselves to complete the causal chain because Plaintiff has not alleged how having access to this information enables the thief to know about his cryptocurrency accounts, nor how having this information would enable the thief to gain access to the same.   Such attenuation is sufficient to defeat proximate cause as a matter of law, and Plaintiff's Complaint should be dismissed in its entirety.

> ### 2.  Plaintiff's Allegations Fail Because They Rely on Unforeseeable Criminal Acts

Plaintiff's claims also fail because the alleged harm is dependent upon multiple "independent illegal acts of third parties."  *O'Kefe v. Inca Floats, Inc.*, 1997 WL 703784, at *4 (N.D. Cal. Oct. 31, 1997) (internal citation omitted). Such actions "are deemed unforeseeable and therefore, the sole proximate cause of the injury which excludes negligence of another as a cause of injury." *Id.*; *see also Jesse v. Malcmacher*, 2016 WL 9450683, at *10 (C.D. Cal. Apr. 5, 2016) ("The illegal acts of third parties are unforeseeable as a matter of law."). As one California court observed, defendants "lack the legal or practical ability to control such criminal actions of third parties." Martinez, 225 Cal. App. 3d at 1569; *see also Gregorian v. Nat'l Convenience Stores, Inc.*, 174 Cal. App. 3d 944, 947 (1985).

Courts outside California have reached the same conclusion in similar circumstances. For example, in *Citizens Bank of Pennsylvania v. Reimbursement Techs., Inc.*, the plaintiff bank sued the defendant, a physician billing company, after one of the defendant's employees provided the financial information of 134 bank customers to a fraud ring over the course of nine months. 2014 WL 2738220, at *1 (E.D. Pa. June 17, 2014), *aff'd*, 609 F. App'x 88 (3d Cir. 2015). Even though the defendant had a statutory duty to

DEFENDANT'S MOTION TO DISMISS

protect patient data, the court dismissed the plaintiff's complaint for failure to allege proximate cause. *Id*. at *1–2. The plaintiff's claim was "causally separated from plaintiff's actual harm by multiple intervening acts of independent third parties," including a rogue employee of the defendants, members of a third-party "fraud ring," and "plaintiff's own employees" who did not notice any fraudulent activity "until after the fact." *Id*. at *5.

Much like the defendant in *Citizens Bank*, MINT lacks the legal and practical ability to control the acts of criminals, and especially sophisticated hackers. While MINT contends the security measures in place at the time of the alleged SIM port were adequate, the theft of Plaintiff's cryptocurrency would involve: (1) a SIM port; (2) by those with knowledge regarding Plaintiff's specific cryptocurrency holdings; (3) that illegally hacked these specific accounts; (4) that required knowledge of how to bypass the security measures in place by the cryptocurrency accounts; (5) that also required knowledge of how to bypass any security measures in place that would prevent unauthorized movement of the cryptocurrency holdings. Plaintiff has not alleged what independent and illegal acts occurred that allowed the hackers to have knowledge of his cryptocurrency holdings and also what illegal acts were necessary to effectuate the movement of Plaintiff's cryptocurrency holdings. Additionally, Plaintiff has not plead any facts that would indicate that MINT provided this knowledge to the criminals. Accordingly, Plaintiff's Complaint should be dismissed in its entirety for failure to allege proximate cause.

C.   **Plaintiff's Claims Under the California Unfair Competition Law – Cal. Bus. & Prof. Code § 17200 *et seq*., Counts IV, V, and VI, Should be Dismissed Because Plaintiff is Seeking Monetary Damages**

This Honorable Court should dismiss Counts IV, V, and VI of Plaintiff's Complaint because Plaintiff is seeking only monetary damages and has not adequately pled what restitution, if any, to which he is entitled. "Remedies for violation of California's unfair competition law are limited to injunctive relief and restitution; plaintiff may not recover monetary damages." *Soil Retention Products, Inc. v. Brentwood Industries, Inc.* 2021 WL

10

689914. Restitution is limited to "money or property lost by the plaintiff and acquired by the defendant." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1135 (9th Cir. 2014).

### 1.   Plaintiff is not entitled to monetary damages under the California Business and Professional Code

Replete in the Wherefore clauses of Counts IV-VI of Plaintiff's Complaint is a request for "damages, including compensatory damages, punitive damages, interest, attorneys' fees, expenses, and any other relief the Court deems just and proper." However, as articulated by *Soil Retention Products*, none of these remedies are available to Plaintiff under the Cal. Bus. & Prof. Code § 17200 *et seq*.[4] Plaintiff's Complaint is centered on the facts surrounding an alleged security breach that resulted in the loss of Plaintiff's cryptocurrency assets. There are no allegations that MINT in any way reaped any benefits in any manner as a result of this theft, nor that MINT mobile was the recipient of "money or property lost by the plaintiff and acquired by [MINT]." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1135 (9th Cir. 2014). Rather, Plaintiff offers bare conclusions that he is entitled to relief due to MINT's unfair business practices.

### 2.   Plaintiff has failed to adequately plead what, if any, restitution he is entitled

The only allegation of injury contained in Count IV reads, "[p]laintiff suffered an injury-in-fact and loss money or property, including stolen cryptocurrencies worth nearly $466,000, as a result of MINT's unlawful business practices. Compl. ¶ 165. While Plaintiff does allege that he would not have paid for MINT's services had he known the truth regarding inadequate security and that he is entitled to restitution, Compl. ¶¶ 166-167,

---

[4] Plaintiff is also not entitled to disgorgement of wrongfully obtained profits. Nonrestitutionary disgorgement is not available under section 17203. *In re Napster, Inc. Copyright Litig.*, 354 F. Supp. 2d at 1126-27. And Plaintiff's generic allegation that he is entitled to injunctive relief without identifying harm he seeks to enjoin is insufficient. *See Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991) (injunctive relief "must be tailored to remedy the specific harm alleged").

Plaintiff has failed to demonstrate the amount of money "lost by [him] and acquired by defendant." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1135 (9th Cir. 2014). Indeed, "[t]he object of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest," *In re Napster, Inc. Copyright Litig.*, 354 F. Supp. 2d 1113, 1126-27 (N.D. Cal. 2005) (internal quotation marks omitted), but Plaintiff has failed to adequately plead the existence of such funds, and offers only conclusory, legal conclusions.

Similarly, in Counts V and VI, Plaintiff pleads nearly identically as he did in Count IV in terms of alleging his claims for restitution, but failed to adequately plead what monetary amounts, if any, would qualify as restitution. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1135 (9th Cir. 2014). The conclusory allegations found at ¶¶ 187 and 195 are insufficient to withstand the pleading standard due to lack of factual support. Accordingly, Counts IV-VI of Plaintiff's Complaint should be dismissed.

### D. Plaintiff's Claim Under The Computer Fraud and Abuse Act, 18 U.S.C. § 1030, Count III, Should Be Dismissed Because §§ 1030(a)(2)(C) and 1030(a)(4) Do Not Permit Civil Actions

This Honorable Court should dismiss Count III of Plaintiff's Complaint because Plaintiff has not adequately plead conduct and losses necessary to have occurred for which civil redress is permitted under the statute. Subsection (g) of the CFAA provides:

> Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought **only** if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i). Damages for a violation involving only conduct described in subsection (c)(4)(A)(i)(I) are limited to economic damages. No action may be brought under this subsection unless such action is begun within 2 years of the date of the act complained of or the date of the discovery of the damage. No action may be brought under this subsection for the negligent

12

1
2
    design or manufacture of computer hardware, computer software, or firmware.

3
*See* 18 U.S.C. § 1030.

4
5
    The only portion of the of the statute that seems applicable is subclause (I) of subsection (c)(4)(A)(i). Under subclause (I), the plaintiff is required to plead a "loss to 1 or more persons during any one year period … aggregating at least $5,000 in value." *Id.* § 1030(c)(4)(A)(i)(1).

6
7
8
    The CFAA defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11). Courts have repeatedly noted that the type of losses contemplated by the CFAA are "the remedial costs of investigating a computer for damage, remedying damage done, and costs incurred while the computer is inoperable." *Clinton Plumbing & Heating of Trenton, Inc. v. Ciaccio*, 2010 WL 4224473, *6 (E.D. Pa. Oct. 22, 2010). On the other hand, costs unrelated to computer impairment or damages—such as a party "stealing money via ACH transfers"—are "not the type of 'loss' contemplated by CFAA" and "not a loss for which the CFAA provides a civil remedy." *Clinton Plumbing & Heating of Trenton, Inc. v. Ciaccio*, 2011 WL 6088611, at *5 (E.D. Pa. Dec. 7, 2011).

9
10
11
12
13
14
15
16
17
18
19
20
    In this case, Plaintiff has attempted to plead a loss greater than Five Thousand Dollars. Compl. ¶¶ 151, 152. However, missing are any allegations that this Five Thousand Dollars is any way related to "reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service," 18 U.S.C. § 1030(e)(11), or that this money in any way relates to remedial costs for

21
22
23
24
25
26
27
28

---
13

DEFENDANT'S MOTION TO DISMISS

CASE NO. 3:22-cv-00138-WHA

investigation, remedying damage, or other consequential damages relating to loss of service. *Heating of Trenton, Inc. v. Ciaccio*, 2010 WL 4224473, *6 (E.D. Pa. Oct. 22, 2010).

Count III of Plaintiff's Complaint should be dismissed because Plaintiff has failed to plead that his losses in excess of Five Thousand Dollars were losses as contemplated by the CFAA as defined by the Courts. *See Heating of Trenton, Inc.* 2010 WL 4224473, *6 (E.D. Pa. Oct. 22, 2010).

**E.** **Plaintiff's Claim for Breach of Implied Contract, Count XI, Should Be Dismissed Because Merely Pleading Opening a MINT Wireless Account Is Insufficient to Demonstrate The Existence Of The Terms Of An Implied Contract**

This Honorable Court should dismiss Count XI of Plaintiff's Complaint because Plaintiff has failed to allege any facts that evidence MINT's intent to create an implied contract. "A cause of action for breach of implied contract has the same elements as does a cause of action for breach of contract, except that the promise is not expressed in words but is implied from the promisor's conduct." *Yari v. Producers Guild of Am., Inc.*, 161 Cal. App. 4th 172, 182 (2008) (citation omitted). Both the existence and the terms of an implied contract are manifested by conduct. Cal. Civ. Code § 1621. The plaintiff must show that both parties agreed to the contract, and that both parties intended to make a promise. *Div. of Labor Law Enforcement v. Transpacific Transp. Co.*, 69 Cal. App. 3d 268, 275 (1977); *Sacramento Cty. Retired Employees Ass'n v. Cty. of Sacramento*, 975 F. Supp. 2d 1150, 1166 (E.D. Cal. 2013) ("It is true that a course of conduct may show an implied promise, but 'the very heart of this kind of agreement is an intent to promise.'" (citing *Gorlach v. The Sports Club Co.*, 209 Cal. App. 4th 1497, 1507 (2013)) (emphasis in original)); *see also Foster Poultry Farms v. Aklar-Rapidpak-MP Equip., Inc.*, 868 F. Supp. 2d 983, 995 (E.D. Cal. 2012).

1
2
3
4
5
6
7
8
9
10

Plaintiff attempts to plead that "the opening of a MINT wireless account [] created implied contracts between MINT and Plaintiff as to the protection of his Personal Information, the terms of which were set forth by the relevant Privacy Policy Terms and Conditions." Compl. ¶ 242. However, Plaintiff has not alleged any acts that MINT took that would evidence MINT's intent to form an implied contract. "It is true that a course of conduct may show an implied promise, but 'the very heart of this kind of agreement is an intent to promise.'" *Sacramento Cty. Retired Employees Ass'n v. City of Sacramento*, 975 F. Supp. 2d 1150, 1166 (E.D. Cal. 2013) (quoting *Gorlach v. The Sports Club Co.*, 209 Cal. App. 4th 1497, 1507 (2013). Accordingly, Count XI of Plaintiff's Complaint should be dismissed.

11
12

    F.     **Plaintiff's Claims For Punitive Damages Should be Dismissed Because Plaintiff Has Not Adequately Pled Entitlement to Punitive Damages**

13
14

        1.     **Plaintiff has not adequately plead he is entitled to punitive damages under any Counts in his Complaint.**

15
16
17
18
19
20
21
22
23
24
25

Plaintiff's Claims for punitive damages should be dismissed because Plaintiff has failed to adequately plead that any officer, director, or managing agent of MINT knew that lower level employees were engaged in fraudulent, malicious or oppressive behavior nor that MINT allowed such behavior to continue. Plaintiff has sought punitive damages in the general prayer for relief of Counts II, III, IV, V, VI, VII, VIII, XI, X, XI, and XII. Punitive damages are "disfavored by the law," *Kelley v. Corr. Corp. of Am.*, 750 F. Supp. 2d 1132, 1147 (E.D. Cal. 2010), and available only upon clear and convincing evidence that the conduct giving rise to the award is "so vile, base, contemptible, miserable, wretched or loathsome that it would be looked down upon and despised by ordinary decent people" or "[having] the character of outrage frequently associated with crime." *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1287 (1994).

26
27
28

California law holds that punitive damages may only be awarded against an entity defendant based on the entity's "own wrongful conduct." *Weeks v. Baker & McKenzie*, 63

15

Cal. App. 4th 1128, 1154 (1998). An entity may not be held liable for punitive damages based upon the acts of an employee unless the plaintiff proves, by clear and convincing evidence, that an "officer, director or managing agent" of the entity either: (1) had advance knowledge of the unfitness of the fraudulent, malicious or oppressive employee and employed him or her with a knowing disregard of the rights or safety of others; or (2) committed, ratified, or authorized the fraudulent, malicious or oppressive conduct. Cal. Civ. Code § 3294(b). Managing agents are employees who "exercise[] substantial discretionary authority over decisions that ultimately determine corporate policy." *Cruz v. HomeBase*, 83 Cal. App. 4th 160, 167 (2000) (alteration and emphasis in original) (quoting *White v. Ultramar, Inc.*, 21 Cal. 4th 563, 569 (1999)). By confining liability to "officer[s], director[s], and managing agent[s]," California law "avoids punishing the corporation for malice of low-level employees which does not reflect the corporate 'state of mind' or the intentions of corporate leaders." *Cruz, 83 Cal. App.* 4th at 167; *see also White*, 21 Cal. 4th at 569.

Plaintiff's Complaint is devoid of any factual support that lends itself to the conclusions that an "officer, director or managing agent" had any knowledge that lower-level MINT employees were engaged in "fraudulent, malicious or oppressive conduct." Rather, Plaintiff's Complaint merely alleges that MINT had inadequate security measures in place to protect his personal information that violated certain statutory and common law duties. Compl. ¶¶ 87 – 100. The only alleged MINT employee referenced by name is Rizwan Kassim, MINT's co-founder. Compl. ¶ 46. The only action referenced by Plaintiff that Mr. Kassim took was an acknowledgement that a "broader set of security items" were not used at the time of the hack. Compl. ¶ 47. This action does not in any way lend credence to the fact that Mr. Kassim was aware of "fraudulent, malicious or oppressive conduct" of lower level employees nor does it allege that Mr. Kassim approved any actions of lower level employees that could even be considered "fraudulent, malicious or oppressive conduct." Cal. Civ. Code § 3294(b).

16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 2. Plaintiff's Allegations Regarding Malice, Fraud, and Oppression Are Conclusory and Lack Adequate Factual Support to Identify MINT's Metal State of Mind

Additionally, Plaintiff's claims for punitive damages should be stricken because Plaintiff has failed to plead any factual support that MINT acted with malice, fraud, or oppression. In California, a "conclusory characterization of defendant's conduct as intentional, willful and fraudulent is a patently insufficient statement of 'oppression, fraud or malice.'" *Brousseau v. Jarrett*, 73 Cal. App. 3d 864, 872 (1977) (quoting Cal. Civ. Code § 3294(a)); *Lavine v. Jessup*, 161 Cal. App. 2d 59, 69 (1958) ("mere use" of terms like fraud "is not enough"; "facts constituting bad faith or fraud must be specifically alleged"); *Torralbo v. Davol, Inc.*, 2017 WL 5664993, at *7 (C.D. Cal. Oct. 19, 2017).

Curiously, the first time Plaintiff alleges malice or fraud is in Count VII, the Negligence Count. Compl. ¶¶ 196 – 210. Baldly, Plaintiff asserts that MINT's conduct "as alleged herein is malice, fraud, or oppression" and as a result, "Plaintiff is entitled to punitive damages against MINT." Compl. ¶¶ 209; 210. Not only are there no allegations of fraud or malice present prior to Count VII, there are also no facts pled to support MINT's mental state surrounding MINT's alleged fraudulent actions. Other bare legal conclusions concerning fraud or malice are contained throughout the Complaint. *See e.g.* Compl. ¶¶ 230; 251. Plaintiff's allegations concerning fraud, malice and oppression are bare legal conclusions "devoid of factual support" evidencing MINT's intent. *See Perez v. Auto Tech. Co.*, 2014 WL 12588644, at *7 (C.D. Cal. July 14, 2014) (conclusory statements to support punitive damages "are not entitled to the presumption of truth under *Iqbal* and *Twombly*"); *see also Lavine v. Jessup*, 161 Cal. App. 2d 59, 69 (1958) ("mere use" of terms like fraud "is not enough"; "facts constituting bad faith or fraud must be specifically alleged"); *Torralbo v. Davol, Inc.*, 2017 WL 5664993, at *7 (C.D. Cal. Oct. 19, 2017). Instead, Plaintiff simply relies on the allegations used to support his claims to infer that he is entitled to punitive damages without providing specific factual support that evidences MINT's

17

mental state of mind evidencing intent to act in a fraudulent, oppressive, or malicious manner. Thus, all claims for punitive damages should be stricken.

### 3. Plaintiff's Claims For Punitive Damages Fail As To The Contractual Counts, Counts X, XI, and XII, As A Matter Of Law

Plaintiff's claims for punitive damages under his contractual Counts should be stricken because under California law, punitive damages are not available in contract actions. Further evidencing the fact that Plaintiff has taken a "catch all" approach to his pleading is his prayer for relief in his contractual claims where he requests punitive damages. **Punitive damages are not recoverable in breach of contract actions.** *Myers Building Industries, Ltd. v. Interface Technology, Inc.* 13 Cal.App.4th 949, 960 (1993) Accordingly, Plaintiff's request for punitive damages should be stricken from Counts X, XI, and XII.

### 4. Plaintiff's Claim For Punitive Damages Under Counts II, III, IV, V, and VI Fail As A Matter of Law

#### a. Plaintiff's Claims for Punitive Damages Under Count II, Violations of FCA, Fail as a Matter of Law

Plaintiff's request for punitive damages for violation of the FCA should be stricken because the statutory remedial scheme does not allow for punitive damages. Also part of this remedial scheme are §§ 206 and 207, which permit a private party to seek damages only. *See* 47 U.S.C. §§ 206, 207. The fact that the Communications Act speaks clearly as to the specific remedies available for violation of its provisions (*i.e.* the fact that Congress was *not* silent on this point) suggests that Congress did not intend the full range of remedies, specifically equitable relief, to be available. *Cf. Franklin v. Gwinnett County Pub. Sch.,* 503 U.S. 60, 68, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992) ("[A]ll appropriate relief is available in an action brought to vindicate a federal right when Congress has given *no indication* of its purpose with respect to remedies."). Considering the Communications Act as a whole, the Second Circuit concluded that Congress has "spoken clearly" of its

18

"intent to interfere with the historic equitable powers of the courts." *Id.* (internal quotation and citation omitted). "Congress restricts a court's equitable power when a statute limits that power 'in so many words, or by a necessary and inescapable inference.'" *Id.* (quoting *Porter v. Warner Holding Co.,* 328 U.S. 395, 398, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946)).

In this case, Plaintiff has requested punitive damages under the FCA. However, Congress has legislated what remedies are available for violations of the FCA. *See* 47 U.S.C. § 206 ("common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provision of this chapter, together with reasonable counsel or attorney's fees"). Nowhere in this provision is there any reference that the injured party is entitled to punitive damages. Moreover, other portions of the FCA speak about damages, and limit a private party's right to injunctive relief. *See* 47 U.S.C. §§ 401(a)-(b) (allowing a private party to seek injunctive relief). Congressional intent here is clear: by legislating which damages are available, Congress intended *only* those damages referenced in the FCA to be available for violations. Accordingly, Plaintiff's request for punitive damages under Count II should be stricken.

> **b.   Plaintiff's Claims for Punitive Damages Under Count III Should be Stricken Because 18 U.S.C. § 1030 Does Not Allow For Punitive Damages**

Plaintiff's claims for punitive damages should be stricken from Count III because the statute outlines the available civil remedies, and punitive damages are not mentioned therein. As outlined in Section IV.C. of this brief, 18 U.S.C. § 1030(c)(4)(A)(i)(I) is limited to losses, as defined by the Courts as "the remedial costs of investigating a computer for damage, remedying damage done, and costs incurred while the computer is inoperable." *Clinton Plumbing & Heating of Trenton, Inc. v. Ciaccio*, 2010 WL 4224473, *6 (E.D. Pa. Oct. 22, 2010). Accordingly, Plaintiff's claims for punitive damages should be stricken from Count III as such damages are not available under the statute.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

      **c.**      **Plaintiff's Claims for Punitive Damages Under Counts IV – VI, Violations of the California Unfair Competition Law – Cal. Bus. & Prof. Code § 17200 Fail As A Matter of Law**

For the same reasons as articulated in § IV.B. of the instant motion, punitive damages are not an available remedy under this statute, and all claims for punitive damages under Counts IV – VI should be stricken accordingly. "Remedies for violation of California's unfair competition law are limited to injunctive relief and restitution; plaintiff may not recover monetary damages. *Soil Retention Products, Inc. v. Brentwood Industries, Inc.* 2021 WL 689914. The relief available under restitution is limited to "money or property lost by the plaintiff and acquired by the defendant." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1135 (9th Cir. 2014).

**G.**      <u>**Plaintiff's Tort Claims, Counts VII – IX, Should Be Dismissed Under The Economic Loss Doctrine**</u>

      **1.**      **Plaintiff Has Failed To Satisfy The Requirements To The Exception To The Economic Loss Doctrine**

This Honorable Court should dismiss Counts VII – IX because these claims merely recite allegations that led to an alleged breach of the subject contract. Generally, the economic loss rule "bars tort claims based on contract breaches." *UMG Recordings, Inc. v. Global Eagle Entm't*, 117 F. Supp. 3d 1092, 1103 (C.D. Cal. 2015). In California, "[t]he economic loss rule requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." *Robinson Helicopter Co., v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004). Under the rule, a plaintiff may recover in tort only where she can allege personal injury or damage to property other than the product itself. *Jimenez v. Superior Court*, 29 Cal. 4th 473, 483 (2002).

The California Supreme Court recognized an exception to the economic loss rule in *J'Aire Corporation v. Gregory*, wherein the rule does not prevent recovery in tort if a

20

special relationship exists between the plaintiff and the defendant. 24 Cal. 3d 799, 804 (1979). The *J'Aire* exception is available if plaintiffs adequately plead a special relationship. *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113 (N.D. Cal. 2018)

Courts examine six factors to determine whether a special relationship exists:  (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct and (6) the policy of preventing future harm. *J'Aire*, 24 Cal. 3d at 804. For purposes of this motion, MINT argues that factors (1), (2), (4), and (5) are not satisfied; thus, Plaintiff has failed to plead a special relationship.

### 2.   On the Balancing Test, Plaintiff Cannot Satisfy the *J'Aire* Factors

#### a.   The First *J'Aire* Factor is Not Satisfied

Plaintiff has failed to allege how the subject was "intended to affect" him in any particular way, as opposed to all other MINT Customers. *See Ott v. Alfa-Laval Agri, Inc.*, 31 Cal. App. 4th 1439, 1455–56 (1995) (stating "neither the pleadings nor the evidence suggests the 1970 milking system was 'intended to affect' the plaintiffs in any way particular to the plaintiffs, as opposed to all potential purchasers of the equipment. The absence of this foundation precludes a finding of 'special relationship' as required by *J'Aire…*" (emphasis added)). Thus, absent a showing of how the subject contract was "intended to affect" the Plaintiff differently than any other purchasers of MINT wireless service, the first *J'Aire* factor cannot be satisfied. *Shapiro v. AT&T Mobilitiy, LLC*, 2:19-cv-8972-CBM-FFM (C.D.CA. May 18, 2020). In this case, Plaintiff has merely presented the subject contract that governed the parties' rights and responsibilities. There are no allegations as to how the subject contract affected Plaintiff differently than any other MINT subscribers. Accordingly, the first *J'Aire* factor is not satisfied.

### b.      The Second *J'Aire* Factor is Not Satisfied

Plaintiff has failed to demonstrate that his alleged harm was foreseeable by MINT. The Complaint does not allege that MINT knew that its security measures were inadequate. Plaintiff alleges that MINT's co-founder was generally aware of broader security measures being available, yet there are no allegations that MINT knew that the security measures it had in place were inadequate. Compl. ¶¶ 45 – 47.  Rather, these allegations merely indicate that broader security measures were not in place, not that the measures in place at the time of the incident were inadequate. Indeed, Plaintiff's Complaint describes a criminal act by a third party (i.e. an illegal SIM port), but does not allege that MINT knew its security measures were inadequate to prevent illegal SIM ports, nor that heightened security measures would have prevented the same.  Accordingly, Plaintiff has failed to satisfy the second *J'Aire* factor.

### c.      The Fourth J'Aire Factor is Not Satisfied

Plaintiff has pled that MINT should be held responsible for the criminal acts of third parties. However, as outlined in §IV.B. of this Brief, Plaintiff has failed to sufficiently plead proximate cause. Proximate cause is crucial to satisfy the fourth *J'Aire* factor, as without an adequate showing of proximate cause, there can be no connection between MINT's conduct and the Plaintiff's harm. Indeed, Plaintiff has pled that third-party criminals stole his cryptocurrency assets. MINT should not be held responsible for the actions of criminals. Because Plaintiff was ultimately harmed by criminals, and not by MINT, there is no connection between MINT's conduct and the Plaintiff's alleged harm. Accordingly, the fourth *J'Aire* factor is not satisfied.

### d.      The Fifth *J'Aire* Factor is Not Satisfied

As pled, Plaintiff described a criminal act performed by a third party. Additionally, Plaintiff does not allege that MINT knew its security measures were inadequate, and now seeks to hold MINT responsible for the criminal acts of others. There is no allegation that

22

MINT knew that it was transferring Plaintiff's CPNI to an authorized person, nor that MINT was aware that its security measures were inadequate. Absent these allegations, i.e, allegations that MINT knowingly and purposefully leaked Plaintiff's CPNI, attaching moral culpability to acts that describe mere negligence do not satisfy the fifth *J'Aire* factor.

As four of the six *J'Aire* factors are not satisfied, this Court should dismiss Plaintiff's tort claims under the Economic Loss Doctrine as there is no "special relationship" between the Plaintiff and MINT.

### H.   Plaintiff's Claims For Injunctive Relief Under Count II, Violation Of 47 U.S.C. § 206 Should Be Stricken

Plaintiff's claims for injunctive relief under Count II should be dismissed for the same reasons as articulated in § F.4.a. of this Brief. The fact that the Communications Act is not silent as to the remedies available for violation of its provisions suggests that Congress did not intend the full range of remedies, specifically equitable relief, to be available. *Cf. Franklin v. Gwinnett County Pub. Sch.*, 503 U.S. 60, 68, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992) ("[A]ll appropriate relief is available in an action brought to vindicate a federal right when Congress has given no indication of its purpose with respect to remedies.") Furthermore, in *Conboy v. AT & T Corp.*, 241 F.3d 242, 256 (2d Cir.2001), the United States Court of Appeals for the Second Circuit held that a private party lacks standing under §§ 206 and 207 to request injunctive relief for violation of the Communications Act. Accordingly, Plaintiff's claims for injunctive relief under Count II should be stricken because Plaintiff is a private citizen, and because Congress did not intend for injunctive relief to be an available remedy under the Act. *See* Compl. ¶ 23.

### I.   Plaintiff's Claims For Breach Of The Covenant Of Good Faith And Fair Dealing, Count XII, Should Be Dismissed Because Plaintiff Has Merely Alleged That MINT Failed To Comply With The Express Terms Of The Contract

This Honorable Court should dismiss Count XII of Plaintiff's Complaint because Plaintiff has not alleged that MINT failed, refused, or otherwise frustrated Plaintiff's right

23

to receive the benefits of the subject express contract. The implied covenant of good faith and fair dealing is narrow, existing "merely to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made*." *Guz, v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 349 (2000) (emphasis in original). The "implied covenant of good faith and fair dealing does not impose substantive terms and conditions beyond those to which the parties actually agreed." *Avidity Partners, LLC v. State of Cal.*, 221 Cal. App. 4th 1180, 1204 (2013); *see also Guz*, 24 Cal. 4th at 349. The covenant thus remedies situations where the defendant did not actually breach the parties' contract, but where its actions effectively made the contract without value to the plaintiff.

In this case, Plaintiff is alleging a breach of express contractual terms. *See generally, Compl.* Accordingly, Plaintiff is attempting to impose a duty on MINT beyond those contained within the subject contract, and there are no allegations that demonstrate MINT's intent to frustrate the purpose of the subject contract, nor are there any allegations that demonstrate Plaintiff received no value from the subject contract. Plaintiff has not pled that MINT failed to provide cell phone services, or that MINT intentionally disrupted cell phone service, or otherwise caused Plaintiff's service to be interfered with. Moreover, Plaintiff's Complaint is bald as to what additional terms he is attempting to enforce under Count XII, leaving MINT to speculate. Is Plaintiff attempting to hold MINT responsible for failing to intervene and prevent criminal acts of third parties? Is Plaintiff attempting to hold MINT responsible for failing to undertake investigation into the alleged SIM Port? Is Plaintiff seeking to hold MINT responsible for not prosecuting the criminal that stole Plaintiff's cryptocurrency assets? There are no allegations of the same in Plaintiff's Complaint.

The covenant of good faith and fair dealing "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Guz*, 24 Cal. 4th at 349-350. Plaintiff has failed to plead what additional duties

or terms, not contained in the subject contract, that he is attempting to hold MINT responsible for, and accordingly, Count XII of Plaintiff's Complaint should be dismissed.

## V.    CONCLUSION

For all of the foregoing reasons, MINT requests this Honorable Court dismiss Plaintiff's Complaint and compel arbitration in accordance with the valid and enforceable arbitration clause in the subject contract.

Respectfully Submitted,

Dated:  February 18, 2022

By:   /s/ *Michael Sachs*
Michael B. Sachs
**CLARK HILL LLP**
505 Montgomery St., 13th Floor
San Francisco, CA 94111
Telephone:  (415) 984-8530
Facsimile:  (415) 984-8599
msachs@ClarkHill.com

Ernest F. Koschineg, III
(Pro Hac Vice forthcoming)
Jessica M. Heinz
(Pro Hac Vice forthcoming)
**CIPRIANI & WERNER PC**
450 Sentry Parkway - Suite 200
Blue Bell, PA 19422
Telephone: (610) 567-0700
ekoschineg@c-wlaw.com
jheinz@c-wlaw.com
*Attorneys for Defendant,*
*Mint Mobile, LLC*

1
2
**CERTIFICATE OF SERVICE**
3
    I, the undersigned, declare that I am over the age of 18 and am not a party
4
to this action. I am employed in the City of San Francisco, California; my
5
business address is 505 Montgomery Street, 13th Floor, San Francisco, California
6
94111.
7
    On the date below, I served a copy of the foregoing document entitled:
8
9
**DEFENDANT MINT MOBILE, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**
10
on the interested parties in said case as follows:
11
**Served Electronically Via the Court's CIVI/ECF System**
12
    I declare under penalty of perjury under the laws of the State of California
13
that the foregoing is true and correct. I declare that I am employed in the office of a
14
member of the bar of this court, at whose direction the service was made. This
15
declaration is executed in San Francisco, California on February 18, 2022.
16
17
_____
18
LYDIA M. BROWN
19
20
21
22
23
24
25
26
27
28

Case No. 3:22-CV-00138-WHA